REC'D NOV 1 0 2009

CR07-86 LRR

## CRY BABY JUDGES GO GAGA

United States Marshals ask that photos of Judges not be used at protests. After members of CODE PINK agreed to protest against a group of Judges that are involved in covering up for a group of corrupt government officials from the Bush Administration, the United States Marshals asked not to use Judges photos. The Judges include; Judge Paul A. Crotty, Judge Diana E. Murphy, Judge Bobby E. Shepherd, Judge Lavenski R. Smith and Judge Linda R. Reade.

George Tonks
09650-424
Federal Correctional Institution
2680 Highway 301 South
Jesup, GA  31599

## CURRECT UPDATES

    * Human rights advocates from CODE PINK {codepinkalert.org} will be protesting at several locations through out the United States against officials of the George W. Bush administration.  The protests will include posters, banners, flyers and videos of all the corrupt government officials involved in the misconduct and cover-up that took place in my case.  If anyone has access to current photos of Judge Linda R. Reade, Judge Diana E. Murphy, Judge Bobby E. Shepherd, Judge Paul A. Crotty, AUSA Bret Williams, AUSA Marcus Asner, AUSA Ian Thornhill, AUSA Zachary Feingold or FBI Agent Elizabeth Nygaard, call Allan Mack at 718-842-1640.

    * After attorney Susan V. Tipograph agreed to conduct the investigation into the governmental misconduct, the Second Circuit Court of Appeals immediately removed her from the case.  Susan V. Tipograph has years of experience and is capable of handling any investigation. The court appointed a new attorney who refuses to investigate the misconduct.

On June 25, about two dozen human rights activists, some hooded and clad in orange jumpsuits, gathered to protest U.S. interrogation policies in front of the Ninth Circuit Court of Appeals in San Francisco. The protesters focused on Judge Jay Bybee, a former attorney in the Office of Legal Counsel in the Bush Administration, who now serves on the Ninth Circuit Court of Appeals. Activists also organized a "die in" in front of the Justice Department in Washington, D.C. They are calling on Attorney General Eric Holder to appoint a special prosecutor for torture to investigate crimes perpetrated by Bush Administration officials.

*For more information, go to codepinkalert.org.*



AFP PHOTO/KAREN BLEIER

© CODEPINK

# Bye Bye, Bybee

AFP PHOTO/KAREN BLEIER

# Crashing the Beach Party





**New York City**

Bikini-clad activists from the women's peace group Code Pink crashed the Israeli Ministry of Tourism's "Tel Aviv Beach Party" in Central Park to draw attention to war crimes committed by Israel during its ongoing and illegal occupation of Gaza.

*For more information, go to codepinkalert.org.*

PHOTOS © CODEPINK

Case 1:07-cr-00086-CJW-MAR   Document 45   Filed 11/10/09   Page 3 of 56

George Tonks
Reg. No. 09650-424
Federal Correctional Institution
2680 Highway 301 South
Jesup, GA  31599


November 4, 2009



Honorable Linda R. Reade
United States Courthouse
4200 C Street, SW
Cedar Rapids, IA  52404



Dear Judge Reade:


My name is George Tonks, I am currently a federal prisoner, recently sentenced to 17 years in prison plus 8 years of supervised release, for a total of 25 years. The charges against me include conspiracy to commit wire fraud in the Southern District of New York and in the Northern District of Iowa.  I am completely innocent of the Iowa charges.  The total loss that I am responsible for in the Southern District of New York is much less then five hundred thousand dollars. The length of my prison sentence is cruel and unusual punishment.  In the European Union or in Canada, I would only have received restitution and a fine.

The corruption surrounding my case is unprecedented.  One corrupt government official is lying and covering up to protect another.  I am writing to you to ask for your help in initiating and investigation into the malicious prosecution and criminal misconduct that occurred.  The government officials involved include; Assistant United States Attorney Bret Williams, Assistant United States Attorney Joshua Klein, Assistant United States Attorney Ian Thornhill, Assistant United States Attorney Marcus Asner, Assistant United States Attorney Zachary Feingold, Agent Elizabeth Nygaard, Agent Vincent Browning, and Agent Brian Hamway who is also known as Agent Brian Hamoui.  The judges involved in this government corruption and cover up include two George W. Bush appointees, including Judge Linda R. Reade and Judge Paul A. Crotty.

In 2002, after having a problem with a group of Agent Hamway's closest friends, this investigation became personal and out of control. During the investigation, I was drugged, sexually tortured while being interrogated, and terrorized to the point of almost committing suicide. For over three years, I became Agent Hamway's science experiment. The drugs that Agent Hamway gave me were so mind altering and debilitating that I collapsed twice and felt near death. Agent Hamway would frequently check my pulse. On numerous occasions, after being drugged, I experienced hallucinations and black outs that lasted for days at a time. During this period, Agent Hamway and his former boyfriend, Kris Kobach, would terrorize and torture me. Kris Kobach is an attorney working for CNN and is frequently on the Lou Dobbs Show. Kris Kobach, also worked for the George W. Bush administration as the White House Fellow working directly under Attorney General John Ashcroft. On several occasions, after being drugged by Agent Hamway, Hamway would encourage me to participate in illegal activities, including purchasing drugs. Agent Hamway was involved in gay S&M sex and after drugging me, totally against my will, I was stripped naked, pinned down with my hands held above my head, my legs over his shoulders and sexually assaulted/raped while being interrogated. I woke up two days later, tied up and locked in a small room in the basement of an old building on the upper west side. For seventeen days, I was locked in this horrible small room while being drugged and tortured. Agent Hamway would frequently masturbate over me screaming that I was his "dream guy to take out" and that he had "control over me".

During the investigation, Agent Hamway started harassing my family members and friends. When Agent Hamway became aware of a group of Muslim friends of mine that operated a day spa and yoga center in San Francisco, I was put under surveillance that lasted for years. My Muslim friends were also put under surveillance and investigated for no apparent reason. During this period, Agent Hamway used informants, including Jared Weiss, to try to entrap me and set me up in illegal activities. The Same informants would frequently question me about my views on the Middle East, including Israel. Agent Hamway also sent Jared Weiss into my office, located in the Empire State Building, to work under cover, were he encouraged my employees to lie to customers over the telephone. I could go on forever, what happened to me only gets more frightening.

After passing a polygraph test that was administered by one of the country's leading polygraph experts, retired FBI Agent William Kelly, I informed the prosecutor assigned to my case, AUSA Klein, and his supervisor, AUSA Asner, about the criminal acts committed by Agent Hamway. AUSA Asner immediately scheduled a private meeting to discuss Agent Hamway. Everyone present at the meeting acknowledged that Agent Hamway was an agent involved in the investigation. When Kris Kobach's name was mentioned at the meeting, everyone went silent and refused to comment. The FBI agents at the meeting went out of their way to protect Agent Hamway and tried to convince me that I was the sexual predator. It was clear that everyone at the meeting was a personal friend and colleague of Agent Hamway. It was apparent that they were going to do whatever was necessary to cover up Agent Hamway's criminal acts. After the meeting, against my attorney's advice, I informed Judge Paul A. Crotty of Agent Hamway's criminal acts. At that point, AUSA Klein immediately requested that the court seal all records and proceedings pertaining to Agent Hamway. All government officials involved did everything possible, including lie, in order to cover up and protect Agent Hamway.

AUSA Klien stated that Brian Hamway is an agent an worked with the previous prosecutor assigned to my case, AUSA Williams. AUSA Klein stated that "Hamway is Bret's Guy". My previous attorney, Richard Herman, informed me in a letter that AUSA Klein told him at a meeting that Agent Hamway was an agent involved in the investigation. Copies of that letter are available. Richard Herman's assistant, Stefanie Plaumann, informed me verbally in several recorded telephone conversations that AUSA Klein stated that Brian Hamway is an agent and worked with AUSA Williams for years. Recordings of these phone conversations can be made available. AUSA Williams and Agent Nygaard were seen with Agent Hamway at different restaurants and clubs in New York City. Agent Nygaard was also seen with Agent Hamway on several occasions at the Equinox Gym in Greenwich Village, were Agent Hamway exercises daily between 6 p.m. and 8 p.m. When investigators questioned several of Agent Hamway's personal friends who exercise with him daily, all questioned confirmed that Hamway is an agent. When contacting Agent Hamway's former boyfriend, Kris Kobach, Kobach also confirmed that Brian Hamway is an agent. When investigators questioned AUSA Williams, who was transferred to the United States Attorney's Office in Atlanta Georgia, Williams also confirmed that Brian Hamway is an Agent.

After coming forward with the drugging and sexual assault/rape charges against Agent Hamway, everyone involved, including AUSA Williams, AUSA Klein, AUSA Asner, AUSA Feingold, Agent Nygaard, and Agent Browning are now denying that they know anyone with the name of Brian Hamway or Brian Hamoui, and are now insisting that he is not a government employee or agent. AUSA Klein requested that the court permanently seal all records and proceedings pertaining to Agent Hamway. The lies that this group of corrupt government officials have created in order to cover up for Agent Hamway's criminal acts are absolutely outrageous and criminal.

Since coming forward with the truth about Agent Hamway's criminal acts and the cover up involved, Agent Nygaard and AUSA Thornhill have falsely accused me of crimes that I have no knowledge of nor any involvement in. Agent Nygaard has tried everything imaginable to discredit and destroy me. AUSA Thornhill has tried using the government's normal tactic of discrediting by claiming that I am delusional and crazy. Before I was sentenced, I attempted to contact the media and send out copies of the polygraph test results, I was then threatened with twenty years in prison and was locked in solitary confinement for months at a time with only a cement floor to sleep on and without access to a telephone or mail. Agent Nygaard informed a friend of mine, Julie Christman, that if I did not shut my mouth about Agent Hamway, she was "going to make sure that I received a good long time". After that statement by Agent Nygaard, I was indicted on additional wire fraud charges in the Northern District of Iowa. I am completely innocent of those charges and know nothing of any activity in Iowa. AUSA Thornhill and Agent Nygaard threatened former employees with long jail sentences if they did not agree to sign false statement created by AUSA Thornhill and give false testimony to the grand jury in order to have me indicted. The government has no evidence against me and I have again agreed to take a polygraph test regarding my purported involvement in any criminal activities in Iowa.

I am asking you again to please help me initiate an investigation into the malicious prosecution and criminal acts that were committed. I know once Agent Hamway is investigated, it will be revealed that he is an agent and that all government officials involved are lying to cover up for Agent Hamway. An independent investigation and hearing would be the appropriate step. No one should ever be subjected to the drugging and torture that I experienced for years at the hands of a corrupt, sadistic government agent that believes he is above the law. All government officials involved in covering up Agent Hamway's criminal acts, and the outright fabrication of crimes in the Northern District of Iowa, should be investigated and prosecuted to the fullest extent of the law.

I am enclosing the only documents that I have access to at this time. During my sentencing in the Southern District of New York and the Northern District of Iowa, I went into detail about how I was terrorized by this group. Transcripts of my sentencing statements are available at the federal Clerk of Court's offices for the Southern District of New York and Northern District of Iowa. I thank you for your taking time to consider this matter and would greatly appreciate any efforts that you could expend toward exposing the truth of these matters. For more information, I can be contacted at the above address or by leaving a message for me at 718-409-6052.

Sincerely,

George Tonks

# THE WHITE HOUSE

## WASHINGTON

September 21, 2009

**VIA FIRST CLASS MAIL**

George Tonks
Reg. No. 09650-424
Federal Correctional Institution
2680 Highway 301 South
Jesup, Georgia 31599

Dear George Tonks:

Thank you for the letter concerning your case.

Under Department of Justice guidelines, an individual convicted of a federal crime properly may file a petition for executive clemency, in the form of commutation of sentence, when he or she no longer has matters pending before the courts. Once such a petition has been filed with the Justice Department, the Pardon Attorney conducts a painstaking and time-consuming review of the entire case. After his review is complete, the Deputy Attorney General makes a recommendation to the President. In making his decision on the petition, the President considers the Justice Department's recommendation and any other information that has been brought to his attention concerning the case.

I have taken the liberty of forwarding your letter to the Pardon Attorney and of requesting him to send you the necessary forms for submitting a petition for commutation of sentence. If you choose to file an application for clemency, your views on this matter will be given careful consideration at that time. You should understand, however, that these petitions are granted only in very rare circumstances.

Thank you again for writing concerning your case.

Sincerely,

Gregory Craig
Counsel to the President

cc:    Mr. Ronald Rogers
       Pardon Attorney

## ARGUMENT

### POINT I

### THE DISTRICT COURT DEPRIVED TONKS OF HIS RIGHT TO DUE PROCESS OF LAW BY FAILING TO HOLD A HEARING ON THE ISSUE OF OUTRAGEOUS GOVERNMENT MISCONDUCT.

The District Court was presented with allegations from Tonks that a federal case agent, Agent Hamway (a/k/a Agent Hamoui, hereinafter "Agent Hamway"), had been the case agent on his case, had investigated Tonks' case and had engaged in harassing behavior, sexual relations and otherwise outrageously inappropriate conduct with Tonks, his target, over the course of several years. The District Court accepted unsworn allegations from the government that Agent Hamway was not, at the time of the inquiry, a federal agent or member of the New York City Police Department and denied Tonks a hearing on the issue of outrageous government conduct. The district court's denial of a hearing deprived Tonks of due process of law.[3] *United States v. Cuervelo*, 949 F.2d 559, 567-568 (2d Cir. 1991).

---

[3] A motion to dismiss an indictment alleging outrageous governmental conduct is a question of law directed to the trial judge and review of rulings thereon is de novo. *United States v. Cuervelo*, 949 F.2d 559, 567-568 (2d Cir. 1991).

The District Court heard both from Defense Counsel, Mr. Herman, and Tonks, that earlier in the proceedings AUSA Klien had confirmed that Agent Brian Ham[way] was an agent who had worked with AUSA Bret Williams (November 14, 2007, Proceedings p. 3-5).[4] The District Court heard from the defense that Tonks had passed a polygraph test with regard to his claims.

The District Court found, based upon the unsworn assertions of the Government, that Mr. Haw[way] is not a government agent (November 14, 2007, Proceedings p. 6). Upon the Court's reporting of its findings, Tonks requested that his attorney be removed because his attorney lied to him. Tonks alleged that his attorney told him that Hamway was a DEA agent, whereas he informed the District Court that he found the Government's allegations in opposition to Tonks' claims to be in good faith (November 14, 2007, Proceedings p. 3, 11-12). Tonks' application was denied.

That Tonks' allegations would have constituted outrageous government conduct had he been able to establish that Hamway was a

---

[4]However, Defense counsel stated at the November 14, 2007, Proceedings that he believed the assigned Assistant United States Attorney had acted in good faith (November 14, 2007, Proceedings p. 3). Counsel offered up this assessment of the Government's position in violation of his ethical duty to his client. While Counsel was an officer of the Court, he had no obligation to insert his personal view of the government's investigation in opposition to the allegations of his client, especially where the Government's proof was hearsay and did not rule out Tonks' claims.

federal agent and had used evidence obtained from Tonks in connection with his outrageous conduct in the case against Tonks, appears to be undisputed by the Government (November 9, 2007, Letter pp. 7-8). Nevertheless, the District Court denied a hearing on the issue based upon unsworn allegations by the Government.

The Supreme Court has suggested that Government involvement in criminal activity might be, in an extreme case, "so outrageous that due process principles would absolutely bar the Government from invoking judicial processes to obtain a conviction." *United States v. Rahman,* 189 F.3d 88, 131 (2d Cir. 1999), quoting, *United States v. Russell,* 411 U.S. 423, 431-32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

The District Court accepted unsworn allegations from the government that Agent Hamway was not, at the time of the inquiry, a federal agent or member of the New York City Police Department and denied Tonks a hearing on the issue of outrageous government conduct in violation of *United States v. Cuervelo,* 949 F.2d 559, 567-568 (2d Cir. 1991). The District Court accepted the Government's letter stating that it had conducted searches of various databases listing government employees and that none of the databases revealed that Brian Hamway was a federal agent at the time of the inquiry. The government never alleged that Hamway had not been a

federal agent or member of the New York City Police Department in the past. Tonks' allegations could have been true and Hamway could have been terminated as an agent prior to the government's searches of the various databases. The District Court relied upon hearsay in the Government's November 9, 2007, Letter, that, according to Agent Nygaard, there was never an agent by the name of Hamway or Hamoui involved in Tonks' case in any way (November 9, 2008, Letter p. 6). The District Court's refusal to hold a hearing on the issue based upon unsworn allegations by the Government, violated Tonks' Fifth Amendment right to due process of law. U.S.Const.Amend. V; *Rochin v. California*, 342 U.S. 165, 168-172; 72 S.Ct. 205, 96 L.Ed. 183 (1952); *United States v. Cuervelo*, 949 F.2d 559, 567-568 (2d Cir. 1991).

In *Cuervelo*, this Court held that "in federal court, if the government violates a protected right of the defendant, due process principles may bar the government from invoking the judicial process to obtain a conviction, if the government's conduct reach[ed] a demonstrable level of outrageousness. 949 F.2d 559, 567-568 (2d Cir. 1991). The outrageousness of the government's conduct must be viewed "standing alone" and without regard to the defendant's criminal disposition, and there is no meaningful distinction between physical and psychological harm inflicted upon the

defendant. *Id.*

In addressing the question as to whether an indictment must be dismissed based upon outrageous governmental misconduct when a sexual relationship between a defendant and a governmental agent has been shown to exist, the defendant must show:

> (1) that the government consciously set out to use sex as a weapon in its investigatory arsenal, or acquiesced in such conduct for its own purposes upon learning that such a relationship existed; (2) that the government agent initiated a sexual relationship, or allowed it to continue to exist, to achieve governmental ends; and (3) that the sexual relationship took place during or close to the period covered by the indictment and was entwined with the events charged therein.

*United States v. Cuervelo*, 949 F.2d 559, 567-568 (2d Cir. 1991).

The government's claim that Tonks did not satisfy the three *Cuervelo* elements hinged on its claim that Hamway was not a federal agent. Except, the government never alleged that Hamway was never a federal agent, only that its search of law enforcement databases revealed that Hamway was currently not an agent (November 9, 2007, letter p. 5-9). The government's allegation from Agent Nygaard that Hamway was never assigned to the case was an unsworn hearsay allegation. Tonks' allegations demanded more investigation. Instead the district court denied his claims without any hearing. Because this Court is left with an incomplete record on the issue of

outrageous governmental misconduct, this Court should remand so that Tonks' claims can be addressed by a proper hearing. At a proper hearing, allegations are sworn and tested through cross-examination. *United States v. Cuervelo*, 949 F.2d at 567 (once the district court makes its fact finding, this Court can then proceed to determine whether any violation of due process standards has occurred). This Court held in *Cuervelo*, that a "hearing allows for a searching inquiry into the particulars of the investigative process employed by the government . . . and also "provides the district judge with an opportunity to observe the demeanor and assess the credibility of various witnesses." *Id.* This Court held in *Cuervelo*, "[m]ost often, conducting a hearing is the preferred course of action in cases where disputed factual issues exist." *Id.*

Hotly contested issues of fact existed in Tonks case. The District Court's failure to hold a hearing based upon unsworn allegations by the government, that did not completely rule out Tonks' claims, deprived Tonks of due process of law under the Fifth Amendment to the United States Constitution. U.S.Const.Amend. V; *Rochin v. California*, 342 U.S. 165, 168-172; 72 S.Ct. 205, 96 L.Ed. 183 (1952); *United States v. Cuervelo*, 949 F.2d 559, 567-568 (2d Cir. 1991). This Court should remand for a hearing to be held on the issue of Tonks' claims of outrageous government misconduct.

George Tonks
09650-424
Federal Correctional Institution
2680 Highway 301 South
Jesup, GA  31599
718-409-6052

CURRENT UPDATES

*    Attached  you  will  find  sealed  transcripts  that  were
recently released to me.  Anyone reading them can see how much
of a pathetic liar Assistant United States Attorney Joshua Klein
is.    Both AUSA Joshua Klein and AUSA Bret Williams continue to
cover-up for Agent Brian Hamway and Kris Kobach.
     Kris Kobach was counsel to Attorney General John Ashcroft
and White House Fellow under the George W. Bush administration.
Kris  Kobach  was  also  Brian  Hamway's  former  lover  and
participates in gay S&M sex, torture and dresses in drag.

*    Two United States Marshals stated that "the government is
hiding Agent Brian Hamway, eventually he will surface".

*    Judge Linda R. Reade & Judge Paul A. Crotty, two George W.
Bush  appointees,  continue  to  over  look  and  cover-up  the
misconduct and sexual torture by officials of the George W. Bush
administration.

1    (Case called; all sides ready)

2    THE COURT:  Before we go any further with this, I

3    understand the purpose of today is to take a plea?

4    MR. KLEIN:  That is correct, your Honor.

5    MS. PLAUMANN:  Yes, your Honor.

6    THE COURT:  There are a couple of matters that I've

7    gotten letters from Mr. Tonks on October 9, October 14 and also

8    October 14 -- or four letters, October 22nd, some of which have

9    been sent to you, Mr. Klein; at least they show as being sent

10    to you.  One is sent to Pam Zeckman at CBS News.

11    Have you seen these letters, Mr. Klein?

12    MR. KLEIN:  Your Honor, I have received a letter

13    dated -- there is a typed date of July 21, 2007.

14    THE COURT:  A handwritten note of 10/9?

15    MR. KLEIN:  Exactly, that is the letter I received.

16    THE COURT:  All right.  And there is also a letter

17    from Mr. Tonks indicating that he wants new counsel, of

18    October 14th, and two letters to that effect.

19    And then another charging serious misconduct -- two of

20    these letters charge serious misconduct.

21    I want to mark these.

22

23

24    (Pause)

25    Have you had a chance to read them, Ms. Plaumann?

1    MS. PLAUMANN:  I have, your Honor, yes.

2    THE COURT:  I really don't want to proceed.  I note

3    that the letter of October 14th, there are two letters of that

4    date, in which Mr. Tonks asks that Mr. Herman be replaced.  So

5    one of the questions we ask in plea allocutions is if you are

6    satisfied with the representation.  There is no sense in

7    proceeding further if Mr. Tonks not satisfied with the

8    representation so --

9    MS. PLAUMANN:  Your Honor, I think that, respectfully,

10    if your Honor would like to voir dire Mr. Tonks prior to any

11    kind of plea allocution or withdrawing his previously entered

12    plea of not guilty to see how he is feeling today, perhaps we

13    might be able to resolve this issue.  I don't know, it will

14    certainly be up to your Honor in the long run, but if you would

15    like to voir dire Mr. Tonks, he would certainly be able to

16    address any concerns.

17    THE COURT:  All right.  And what do you say about the

18    letters of October 9 and October 22?

19    MS. PLAUMANN:  Well, your Honor, Mr. Tonks is correct,

20    we did bring a polygrapher into the Metropolitan Correctional

21    Center to meet with Mr. Tonks to question him about these

22    allegations.  He did pass that polygraph.  We did pass those

23    results along to the United States Attorney's office, and we've

24    spoken to Mr. Klein and his supervisor, Marcus Asner, with

25    regard to these allegations.  I don't know what I certainly

Case 1:07-cr-00086-CJW-MAR    Document 45    Filed 11/10/09    Page 16 of 56

1   they are very serious allegations of misconduct. I don't know
2   what your Honor's position is on any of this.
3         Mr. Tonks has indicated in his October 9th letter that
4   he is willing to be questioned under oath, undergo whatever the
5   Court deems necessary to get to the bottom of these
6   allegations, if the Court deems it necessary. As I say, we did
7   bring it to the attention of the U.S. Attorney's office, but
8   they certainly are serious allegations.
9         THE COURT: Mr. Klein, do you have anything to say?
10        MR. KLEIN: Your Honor, we actually met not only with
11  counsel but with Mr. Tonks and we heard directly from the
12  defendant what he had to say, not with respect to his feelings
13  about counsel but certainly with respect to the allegations
14  contained in the October 9th letter.
15        You know, we're going to do -- we have done a little
16  bit of follow up. We're going to do a little bit more follow
17  up.
18        I can tell the Court, one of things that is indicated
19  in this letter is that Brett Williams went to his office at the
20  Empire State Building and that he later learned that Bret
21  Williams was the original prosecutor on the case -- on his
22  case, that's the defendant speaking in a letter. My
23  understanding is that the Bret Williams that initially handled
24  this case has never been inside the Empire State Building.
25        My understanding is that to the extent that the Brett

1   Williams went to the Empire State Building, it would not have
2   been the same Bret Williams as the former A.U.S.A. that
3   initially handled this case.
4         With respect to the allegations concerning Brian
5   Hamway, we spoke to the defendant. The defendant, as I
6   understand it, is surmising from certain events that occurred
7   that an individual that he had some dealings with is or was a
8   federal agent. But as I understand it, you know, it's
9   essentially the defendant's conjecture based on certain events
10  that occurred. We don't know yet whether or not, you know,
11  this individual is an agent and we don't have any additional
12  information beyond what the defendant told us.
13        We're certainly going to do some additional follow up
14  on this. We've already done some follow up on it.
15        THE COURT: If you are going to do follow up on it,
16  why are we taking a plead today?
17        I guess in the back of my mind, I have the case of the
18  United States v. Cuervelo, which was decided at 949 F.2d 559 in
19  1991, and it dealt with allegations of outrageous conduct by
20  the prosecution. And Judge Leisure took a plea, and on appeal
21  they said, well, no, you have to have a hearing on these
22  matters. I mean, who knows what the impact was of the alleged
23  outrageous conduct, and he was told to have a hearing.
24        So unless you can convince me otherwise, Mr. Klein,
25  and subject to what Mr. Tonks is going to say, how that he has

1    been consulting with Mr. Herman and Ms. Plaumann, maybe we do
2    need a hearing. I mean, I don't want to take a plea and then
3    have, you know, Mr. Tonks raising this issue on appeal. I
4    mean, I just can't sit here and say, well, you've looked at it,
5    Mr. Klein, and you don't think there is anything to it.
6
7         MR. KLEIN: What I can tell the Court is I'm fairly
8    certain that the Bret Williams that handled this case did not
9    appear at the Empire State Building at any time and certainly
10   was not in the defendant's offices.
11        With respect to the allegation concerning the
12   individual named Brian Hamway, as far as I know, that
13   individual never had anything to do with this case. I haven't
14   read Cuervelo, but certainly with respect to Mr. Hamway, it
15   appears that, you know, whatever allegations the defendant is
16   making, as far as I can tell, don't relate to this case.
17        That being said, I haven't looked at the case. I
18   wasn't -- I'm not aware of what the law, you know, how the law
19   has developed since 1991 and whether or not there are any
20   concerns, frankly.
21        THE COURT: I can't help you on that one either. I
22   think we ought to -- I'll pause, count to ten, take a look at
23   this. I think, from reading the Cuervelo case, the misconduct
24   dealt with entrapping someone and bringing them into the
25   district and then prosecuting them, by exchange of sexual

1    favors.
2
3
4
5         Now, Ms. Plaumann, do you have anything to suggest?
6         MS. PLAUMANN: OK. Your Honor, we're happy to do
7    whatever the Court would like us to do.
8         THE COURT: Well, no, I don't give legal advice.
9         MS. PLAUMANN: I'm not suggesting you give legal
10   advice, your Honor.
11        THE COURT: What do you want to do?
12        MS. PLAUMANN: Well, Mr. Tonks is gesticulating madly
13   toward me. It seems to me that he --
14        THE DEFENDANT: This took place.          something
15   has to be done about it.
16
17
18
19
20
21
22
23
24        THE DEFENDANT: Can the Court order an independent
25   investigation into what took place?

Case 1:07-cr-00086-JW-MAR   Document 45   Filed 11/10/09   Page 18 of 56

1

2

3

4      MR. KLEIN:  Your Honor, a couple of things.

5          First of all, with respect to Bret Williams, I spoke

6  with Mr. Williams.  He indicated that he had never been in the

7  Empire State Building.

8          THE COURT:  Did he ever work on this case?

9      MR. KLEIN:  Yes, there is a Bret Williams who worked

10 on this case; his name is spelled with one T, not two Ts.  So

11 to the extent that Mr. Weiss' friend spelled his name with two

12 Ts, it wouldn't be the same Bret Williams.  In any event, my

13 understanding from Mr. Williams is that that never happened.

14

15

16

17

18

19

20

21

22          With respect to Mr. Hamway, we're looking into whether

23 or not we can locate a Mr. Hamway, whether or not there is an

24 agent by that name or by the name Brian Hamoui, I just don't

25 know.  I don't think that would take all that long to find out,

1  but as far as I know, again, to the extent that there is

2  something to this incident, as far as I know, it doesn't relate

3  to this case.

4          THE COURT:  So with regard to Hamway or Hamoui, you

5  have no idea whether he is an FBI agent, you have no idea

6  whether he worked on this case, you have no idea of what

7  relationship Mr. Tonks had with Mr. Hamway or Hamoui?

8      MR. KLEIN:  My understanding is, as far as I know,

9  there was never a Brian Hamoui or a Brian Hamway assigned to

10 this case.  So my understanding is more than just not having

11 any idea, I do have an idea.  My understanding is that to the

12 extent that there is an individual by the name of Brian Hamway

13 or Brian Hamoui, that individual -- I don't know whether that

14 individual is an agent, but my understanding is even if that

15 individual is an agent, he was never assigned to this case.

16          THE COURT:  He never worked on the case?

17      MR. KLEIN:  I have no knowledge of anyone by either of

18 these names having ever been involved in this case.

19          And my understanding from meeting with the defendant

20 is that, as the defendant relays it, this individual appeared

21 to solicit the defendant for narcotics, and it was the

22 defendant's understanding that perhaps this individual, whom

23 the defendant believed to be an agent, was involved in some

24 sort of a narcotics investigation that may have been targeting

25 the defendant.

17    THE COURT: And then he will be prepared. You will be
18  prepared to examine him. I will make a determination.
19    Now, tell me this -- put this aside. Why did you
20  think you were going to have a plea agreement today in light of
21  this?
22    MR. KLEIN: Are you asking me, your Honor?
23    THE COURT: Yes, and Ms. Plaumann, too. Why was it
24  scheduled for a plea?
25    MR. KLEIN: My understanding, your Honor, was that, as

14
x7apdtoc        S E A L E D   M A T T E R
1   best I could tell, these allegations relate to a totally
2   separate course of events. We have investigated the allegation
3   concerning Bret Williams; namely, I spoke with Bret Williams,
4   and he said not only has he never been in the defendant's
5   offices but he's never been to the Empire State Building. So I
6   was viewing this allegation as something that involved a
7   possible narcotics investigation by an individual who may or
8   may not have been an agent. I viewed this as a separate course
9   of conduct with respect to which the defendant had provided
10  some information, and I viewed it as something that we would
11  look into. I didn't view it as part and parcel of this case.
12    And that's why, as far as I was concerned, it wouldn't
13  have necessarily stood in the way of a plea proceeding in this
14  case.

# United States Court of Appeals
## FOR THE
## SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3 0 day of March , two thousand nine,

Present:

Hon. Robert D. Sack,
Hon. Barrington D. Parker,
   *Circuit Judges,*
Hon. Timothy C. Stanceu,*
   *Judge, U.S. Court of International Trade.*

---

United States of America,

   *Appellee,*

   v.                                          08-2378-cr

George Bing Tonks

   *Defendant-Appellant.*

---

Susan V. Tipograph, counsel for Appellant, moves for permission to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), and the Government moves to dismiss the appeal, or, in the alternative, for summary affirmance. Upon due consideration, it is hereby ORDERED that decision on the motions is DEFERRED. This Court will not decide a motion to be relieved under *Anders* unless we are satisfied that "counsel has diligently searched the record for any arguably meritorious issue in support of [her] client's appeal" and "defense counsel's declaration that the appeal would be frivolous is, in fact, legally correct." *United States v. Burnett*, 989 F.2d 100, 104

---

* The Honorable Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

SAO-jrm

(2d Cir. 1993). Further, this Court will not independently perform counsel's job for her, absent a complete *Anders* brief. *See Penson v. Ohio*, 488 U.S. 75, 82-83 (1988) (finding prejudice and harmless error analysis inapplicable in *Anders* context); *Burnett*, 989 F.2d at 104 (finding that "[u]nder *Penson*, [this Court] may not independently determine the merits of an appeal, absent a properly prepared *Anders* brief").

Here, counsel's *Anders* brief lacks any discussion of the validity of Appellant's appellate waiver provision and guilty plea in light of Appellant's allegations in the sealed proceeding regarding improper governmental conduct. Accordingly, counsel must, within 14 days of the date of this order, file either a supplemental *Anders* brief or, if she chooses, an appellate brief, addressing, among any other issues counsel wishes to raise, the effect, if any, of Appellant's allegations on the voluntary and knowing nature of the appellate waiver provision and the guilty plea. Once counsel has complied with this order, the motions will be decided by a new panel in the ordinary course.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: _____

George Tonks
Reg. No. 09650-424
Federal Correctional Institution
2680 Highway 301 South
Jesup, GA  31599
718-409-6052

Enclosed you will find recent letters that were exchanged
regarding the outrageous government misconduct that was
committed and then covered up by a group of corrupt government
officials.   This  group  includes:  Assistant  United  States
Attorney Bret Williams, Assistant United States Attorney Joshua
Klein, Assistant United States Attorney Marcus Asner, Assistant
United States Attorney Ian Thornhill, Assistant United States
Attorney Zachary Feingold, Agent Elizabeth Nygaard, Agent Brian
Hamway, and Kris Kobach.   The  judges involved in going along
with the government's corruption include Judge Linda R. Reade
and Judge Paul A. Crotty.



**U.S. Department of Justice**

Office of the Inspector General

*Washington, D.C. 20530*

July 17, 2009

George Tonks
Reg. No 09650-424
Federal Correctional Institute
2680 Highway 301 South
Jesup, GA 31599

Dear Mr. Tonks:

The Purpose of this letter is to acknowledge receipt of your correspondence dated June 4, 2009. In your correspondence you noted that you had submitted to a polygraph exam and possessed some recordings of pertinent telephone conversations but you didn't include these items. The DOJ/OIG is requesting you send any additional information related to your complaint to our office as soon as possible. Based upon a thorough review of all the material that you submitted it was determined the matters that you raised are more appropriate for review by other offices or Agencies, therefore your complaint has subsequently been forwarded to:

>Federal Bureau of Investigation
>Inspection Division
>935 Pennsylvania Avenue NW
>Washington, D.C. 20535
>Telephone number (202) 324-3000
>
>United States District Court
>Southern District of New York
>Daniel Patrick Moynihan
>U.S. Courthouse
>500 Pearl Street
>New York, NY 10007
>
>United States District Court
>Northern District of Iowa
>4200 C Street, S.W.
>Cedar Rapids, IA 52404
>
>Department of Justice
>Office of Professional Responsibility
>950 Pennsylvania Ave, N.W.
>Washington, DC 20530

Any further correspondence regarding this matter should be directed to those offices.

I hope this answers any questions you have relative to this matter.

Sincerely,

*Glenn G. Powell* GW

Glenn G. Powell
Special Agent in Charge
Special Operations
Investigations Division

June 24, 2009


Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
United States Courthouse
500 Pearl Street
New York, NY  10007


Re:    Appellate Docket 08-2378-CR
       District Court Docket 06-CR-771


Dear Ms. Wolfe:

    This an unorthodox approach to an unprecedented situation.  I know
that I should not communicate directly with this Court except through my
attorney, Ms. Susan V. Tipograph.  However, due to the highly sensitive
nature of this situation, Ms. Tipograph has refused to share facts with
this Court that are relevant to a just and equitable resolution in this
matter.  Therefore, I am requesting a Hearing under Rule nisi to testify
to facts and circumstances.  This is primarily because of the high level
government officials involved that have rendered almost all discussion of
certain issues taboo due to the political sensitivity of the people
involved. To support my request for this unorthodox approach I present the
following:

        The Government has not been forthcoming with information on two
        key participants in this matter.  These are Kris Kobach,
        hereinafter Kobach, and Brian Hamway, hereinafter Hamway.

        The Record will show that I came under investigation in 2002.  In
        March 2004, Hamway entered my life and a month later Kobach came
        to my home under unusual circumstances.  From that time forward,
        Kobach and Hamway were in my life daily through associations at
        the Equinox Gym in Greenwich Village and through personal sexual
        relationships with both.

        Over the period from our meeting until I was arrested, I learned,
        and became involved in Kobach's and Hamway's sexual perversions, I
        became aware of Hamway's and Kobach's homosexual relationship that
        apparently had lasted for years and I was brought into their
        orgies, ultimately being a victim of Hamway's sadomasochistic and
        torture rituals.

From the time Kobach entered my life, he was very inquisitive of my business relationships, my travel, and how I obtained my money. Hamway was just as inquisitive and later used sexual and drug related torture to inquire of my activities through interrogation.

After being arrested I became aware that Hamway had been part of the investigation into my activities. It was while in jail that I saw Kobach on CNN. It would become important later that my attorney, Richard B. Herman also has a regular CNN program. It was when I saw Kobach on CNN that I began to realize the suspicious nature of Kobach's and Hamway's inquiry into my activities and how they BOTH appeared to be involved in investigating me.

There was a key meeting held in October 2007 at the United States Courthouse facility at 500 Pearl Street. This was held in a large conference room and the following were present: Richard B. Herman, my attorney; Stefanie Plaumann, Herman's assistant; AUSA Joshua Klein; AUSA Marcus Asner, Klein's supervisor; FBI Agent Elizabeth Nygaard; myself, George Tonks; and four (4) unknown federal Agents from unknown agencies. As the meeting progressed, my attorney Herman, refused to ask questions I had presented to him on Hamway and Kobach. I asked about Hamway and it was acknowledged that he was an agent but when I asked about Kobach, my attorney went silent. AUSA Klein shook his head and said "I've never heard of him" and the others also shook their heads and refused to comment. I mentioned that Herman and Kobach worked together at CNN and all went silent. At the end of the meeting, AUSA Joshua Klein stated that Hamway had a minor role in the investigation and that I could either go to trial or take a plea.

After the meeting, against the advice of Attorney Herman, I informed Honorable Judge Paul Crotty about the governmental misconduct committed during the investigation. From that point forward, everyone involved denied knowing Hamway and insisted that he was not a government agent.

It is impossible that the U.S. Attorney's Office and the FBI did not know of Kobach since in 2002 he worked as White House Fellow in the George W. Bush Administration directly under John Ashcroft, then Attorney General. In 2003 Kobach was Counsel to Ashcroft and it later became known that Kobach worked with Jay Bybee, the attorney that approved the reign of torture by the CIA under the George W. Bush Administration.

Attorney Tipograph has refused to bring this critical information under review of this Court. The only answer to achieve justice seems to conduct a hearing requiring all government officials involved to testify under penalty of perjury regarding this matter. I am asking for this

Hearing to also testify myself, under penalty of perjury, to the extent and nature of the abuse and interrogative torture that I was subjected to during this so called 'investigation'. Several of Hamway's and Kobach's personal friends are also willing to testify in this matter.

Sincerely,

George Tonks
#09650-424
Federal Correctional Institution
2680 Highway 301 South
Jesup, Georgia  31599

cc

Appellate Judges:

    Barrington Parker
    Timothy Stanceu
    Robert Sack

District Court Judge Paul Crotty

Susan V. Tipograph

Glenn A. Fine, Inspector General

Senator Dianne Feinstein

bbc: five (5)

**SUSAN V. TIPOGRAPH**
*Attorney at Law*
350 Broadway, Suite 700
New York, NY 10013
(212) 431-5360
(212) 625-3939 FAX

June 24, 2009

Catherine O'Hagan Wolfe
Clerk, U.S. Court of Appeals
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:  __United States v. Stone (Tonks)__,
     __08-2378-cr__

Dear Ms. Wolfe:

With a cover letter dated June 12, 2009, I received a copy of a letter sent by my client George Tonks to this Court, along with a list of recipients of Mr. Tonks' letter. In the cover letter, it was requested that I supply this Court with a copy of my response.

I was assigned to represent Mr. Tonks in an appeal to this Court from his conviction in the Southern District of New York (Hon. Paul Crotty). After reviewing the record, I filed an <u>Anders</u> brief along with a motion to be relieved. At the Court's request, I made an additional submission addressing Mr. Tonks' earlier claims about governmental misconduct. The appeal of the conviction was, as I understand it, the scope of my assignment.

In his letter (I received an identical letter from Mr. Tonks, this one addressed to me), Mr. Tonks requesting, <u>inter alia</u>, that someone investigate his very extensive claims of governmental misconduct. If that were to be done, whomever was assigned to that responsibility would likely have to make numerous trips to Jessup, Georgia where Mr. Tonks is incarcerated. Additionally, it would require the extensive use of private investigator(s) to look into the various claims that Mr. Tonks is making. Presumably, if his claims of misconduct were bourne out, in full or in part, it might be appropriate to bring an application back to the District Court for relief pursuant to 28 U.S.C. §2255.

Should this Court want these efforts to be within the scope of my assignment, I would request that the Court so specify. Should you require any thing further from me, please let me know. I thank you in advance for your attention to and courtesy in this matter.

Very truly yours,

Susan V. Tipograph

C. The Sealed Proceeding.

The incarcerated Mr. Tonks first appeared before the court concerning a change of plea on October 25, 2007. In a sealed proceeding, Mr. Tonks followed up on allegations he had made in four letters to the court concerning Government misconduct, two of which also sought new counsel

2

(SP 2-3; CA. 3-4).[1] Defense counsel explained that she had had Mr. Tonks polygraphed with regard to the allegations, which included that the initial AUSA assigned to this case had visited Mr. Tonks at Mr. Tonks' business address and that a male agent in the case had a sadistic sexual relationship with Mr. Tonks, and that those results had been shared with the Government (SP 4-5; CA. 5-6).

When the court expressed concern that a hearing pursuant to United States v. Cuervelo, 949 F.2d 559 (2d Cir. 1991) to explore the possibility of outrageous government conduct might be warranted, the Government asserted that it had at least cursorily investigated the allegations and was reasonably certain that the prosecutor had not visited Mr. Tonks and that there was no government agent with the same name as Mr. Tonks's sexual abuser (SP. 5-6, 9-10, 14-15; CA. 4-5, 10-11, 15-16).

The defense consented to the district court's decision to forego the plea proceeding and asked that the court order the government to further investigate Mr. Tonks allegations (SP. 7-8; A. 8-9). The court ordered both

---

[1] References preceded by "SP." refer to the sealed October 25, 2007 proceeding before Judge Crotty, those preceded by "P." refer to pages of the November 27, 2007 plea proceeding, those preceded by "S." refer to the May 6, 2008 sentencing proceeding before Judge Crotty, references preceded by "A." refer to pages of the appendix and references preceded by CA. refer to the pages of the "Confidential Appendix" collating the sealed materials.

parties to further flesh out the facts before it decided whether or not to hold a hearing (SP. 8, 11-13; CA. 9, 12-14). Mr. Tonks retracted his request for new counsel and the proceeding was adjourned pending further investigation (SP. 11, 15-16; CA. 12, 16-17).

By letter dated November 9, 2007, the Government reported the results of its investigation which concluded that the implicated AUSA had never been to Mr. Tonks' office and that the person purported to have had the sexual relationship did exist but that he was neither a government agent, cooperating witness nor informant. The Government opposed any further formal inquiry into the allegations asserting that they were insufficient to warrant a hearing and it appears that the defense withdrew its allegations in the face of the new findings (CA. 20-28).

George Tonks
09650-424
Federal Correctional Institution
2680 Highway 301 South
Jesup, GA  31599


## CURRENT UPDATES


\*    Several reporters informed me that Assistant United States
Attorney Joshua Klein, Assistant United States Attorney Bret
Williams, Assistant United States Attorney Marcus Asner and FBI
Agent Elizabeth Nygaard continue to cover-up and lie about Brian
Hamway, and his former boyfriend Kris W. Kobach.  AUSA Klein, AUSA
Williams, AUSA Asner and Agent Nygaard continue to deny that
"Hamway" or "Kobach" worked for the government.  It is clear that
Kobach worked with Jay S. Bybee, who is currently a Federal Judge,
and authorized the CIA's reign of torture under the George W. Bush
administration.  Kobach was also counsel to Attorney General John
Ashcroft and the White House Fellow.
     Kobach by day is an attorney in Brooks Brothers suits, and by
night can be seen running around Chelsea and Greenwich Village
wearing women's heels... dresses and carrying women's handbags.
     I encourage all reporters to start calling this group of corrupt
government officials including: AUSA Klein, AUSA Williams, AUSA
Asner and Agent Nygaard in New York City, and demand the truth about
Kris Kobach and Brian Hamway.

\*    Recently, I received personal letters from both Senator John F.
Kerry and Representative Jack Kingston regarding the outrageous
government misconduct by top officials of the George W. Bush
administration.  Both Sen. Kerry and Rep. Kingston agreed to open an
inquiry into the governmental misconduct that occurred while I was
being investigated.

\*    My current attorney Susan V. Tipograph has submitted letters to
the Court of Appeals for authority to investigate the outrageous
governmental misconduct.  We are waiting for a response from the
Court to proceed with this unprecedented investigation.

\*    I encourage all reporters who are interested in attending the
hearing if the Court of Appeals orders an investigation and hearing
to call Carol at 718-409-6052 for times and dates.

# DEPARTMENT OF JUSTICE
## Robert F. Kennedy Building Tenth Street and Constitution Avenue, N.W.
## Washington, DC 20530



**John Ashcroft, Attorney General**

**Began Service:** February 1, 2001

**BIOGRAPHICAL**
**Born:** May 9, 1942
**Education:** A.B., Yale University, New Haven, CT, 1964; J.D., University of Chicago, Chicago, IL, 1967
**Career Highlights:** State Auditor, State of Missouri, Jefferson City, MO, 1973-1975; Attorney General, State of Missouri, Jefferson City, MO, 1976-1985; Governor, State of Missouri, Jefferson City, MO, 1985-1993; U.S. Senator (R-Missouri), Washington, DC, 1995-2000

### Useful Telephone Numbers

Personnel Locator . . . . . . . . . . . . . . . . . . . . . . . . . (202) 514-2000
Procurement Info . . . . . . . . . . . . . . . . . . . . . . . . . (202) 307-2000
Public Info . . . . . . . . . . . . . . . . . . . . . . . . . . . . (202) 514-2007
Freedom of Info/Privacy Act . . . . . . . . . . . . . (202) 514-3642
A G Online (Attorney General Comments Line)
  (Toll Free) . . . . . . . . . . . . . . . . . . . . . . . . . . . . (202) 514-2000
Waste, Fraud & Abuse Hot Line . . . . . . . . . . . . . . . (800) 869-4499
Immigration-Related Unfair Employment
  Practices Hot Line . . . . . . . . . . . . . . . . . . . . . . (800) 255-7688
Immigration General Info . . . . . . . . . . . . . . . . . . . (202) 514-4330
Alien Inquiries General Information (DC and
  Virginia) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (202) 307-1501
Alien Inquiries General Information (Maryland) . . . . . . (301) 962-2065
Americans with Disabilities Act Information . . . . . . . . . (800) 514-0301
Amnesty Program/Legalization Gen Info (Toll
  Free) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (800) 777-7700
Hate Crime Hot Line . . . . . . . . . . . . . . . . . . . . . . . (800) 347-HATE
Inspector General . . . . . . . . . . . . . . . . . . . . . . . . . (800) 869-4499
Facsimile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (202) 514-4371
Internet . . . . . . . . . . . . . . . . . . . . . . . . . . http://www.usdoj.gov
Official US Government Website . . . . . . . . . . . http://www.firstgov.gov

## OFFICE OF THE ATTORNEY GENERAL

Facsimile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (202) 514-4371
Internet . . . . . . . . . . . . . . . . . . http://www.usdoj.gov/ag/index.html

(Area Code 202)

★ Attorney General John Ashcroft 5137 . . . . . . . . . . . . . . . . . . . . . . . . . 514-2001
  *Yale 1964 AB; Chicago 1967 JD*
☐ Assistant to the Atty Gen Susan Richmond 5133 . . . . . . . . . . . . . . . 514-3892
  Special Asst to the Atty Gen David Higbee 4140 . . . . . . . . . . . . . . . 616-0906
○ Chief of Staff David Ayres 5133 . . . . . . . . . . . . . . . . . . . . . . . . . . 514-3892
  *Missouri BA; Wharton 1996 MBA*
○ Dep Chf of Staff David Israelite 5112 . . . . . . . . . . . . . . . . . . . . . . . . 514-2991
○ Intergovernmental Affairs Ofc Dir Lori Sharpe Day 1629 . . . . . . . . . . . 514-3465
  E-Mail: lori.sharpe@usdoj.gov
○ Counselor Adam Ciongoli 5142 . . . . . . . . . . . . . . . . . . . . . . . . . . . 514-4495
☐ Counsel Howard Nielson 5138 . . . . . . . . . . . . . . . . . . . . . . . . . . . 514-2267
☐ Confidential Asst Janet Potter 5137 . . . . . . . . . . . . . . . . . . . . . . . . 514-2001
  Director of Scheduling Andrew Beach 5621 . . . . . . . . . . . . . . . . . . . . 514-4195
  White House Fellow Kris Kobach 5612 . . . . . . . . . . . . . . . . . . . . . . . 514-1061

★ Dep Attorney General Larry D Thompson 4141 . . . . . . . . . . . . . . . . . . 514-2101
  *Culver-Stockton 1967 BA; Michigan State 1969 MA; Michigan 1974 JD*
★ Asst Attorney General for Ofc of Justice Pgms Deborah J Daniels
  6400 810-7TH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 307-5933
  *DePauw 1973 BA; Indiana 1977 JD*

(Area Code 202)

★ Asst Attorney General for Ofc of Pol Devel Viet D Dinh 4640 . . . . . . . . 514-4601
  *Harvard 1990 AB, 1993 JD*
  E-Mail: viet.dinh@usdoj.gov
★ Asst Attorney General for Criminal Div Michael Chertoff 2718 . . . . . . . 514-2601
  *Harvard BA, JD*                                                FAX: 514-9412

★ Assoc Attorney General Jay B Stephens 4633 . . . . . . . . . . . . . . . . . . . 514-9500
  *Harvard BA, JD*
★ Asst Attorney General for Ofc of Legal Counsel Jay S Bybee 3264 . . . . 514-2051
  *Brigham Young 1977 BA, 1980 JD*
★ Asst Attorney General for Ofc of Legal Counsel Daniel L Koffsky
  (Actg) 3264 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 514-2051
  *Harvard 1975 AB; Yale 1978 JD*
★ Asst Attorney General for Ofc of Legis Affairs Daniel J Bryant 1145 . . . 514-2141
  *American U 1987 BA, 1992 JD; Oxford (UK) 1993 MSt*
★ Asst Atty General for Antitrust Div Charles A James Jr 3744 . . . . . . . . 514-2401
  *Wesleyan U 1976 BA; George Washington 1979 JD*          FAX: 616-2645
— ★ Asst Attorney General for Civil Div Robert D McCallum Jr 3141 . . . . . . 514-3301
  *Yale BA; Oxford (UK) MA; Yale JD*
— ★ Asst Attorney General for Civil Rights Div Ralph F Boyd Jr 5643 . . . . . 514-2151
  *Haverford 1979 BA; Harvard 1984 JD*
★ Asst Attorney General for Environ & Natural Resources Div Thomas
  L Sansonetti 2143 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 514-2701
  *Virginia 1971 BA, 1973 MBA; Washington & Lee JD*        FAX: 616-3362
★ Asst Attorney General for Tax Div Eileen J O'Connor 4744 . . . . . . . . . . 514-2901
  *Columbus State BA; Catholic U JD*
★ Director, Community Rels Svc Sharee M Freeman 6000 BICN . . . . . . . 305-2935
  *St Lawrence BA; Georgetown 1980 JD*
★ Commissioner, Immigration & Naturalization Svc James W Ziglar
  7100 CAB . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 514-1900
  *George Washington 1968 BA, 1972 JD*
★ Chairman, Foreign Claims Settlement Comm'n John R Lacey * 6002
  BICN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 616-6975
  *Georgetown 1968 BSFS, 1971 JD*

  *(Recess Appointment)
★ Chairman-Designate Foreign Claims Settlement Comm'n Mauricio J
  Tamargo (Sept 30, 2003) 6002 BICN . . . . . . . . . . . . . . . . . . . . . . . 616-6975
  *Miami 1983 BA; Samford 1989 JD*

—★ Inspector General Glenn A Fine 4706 . . . . . . . . . . . . . . . . . . . . . . . . 514-3435
  *Harvard 1978 AB; Oxford (UK) AB, MA; Harvard 1985 JD*
★ Solicitor General Theodore Bevry Olson 5712 . . . . . . . . . . . . . . . . . . . 514-2201
  *Pacific U 1962 BA; Boalt Hall 1965 LLB*
★ Director, Fed Bureau of Investig Robert S Mueller III JEH . . . . . . . . . . . 324-3444
  *Princeton 1966 BA; NYU 1972 MA; Virginia 1973 JD*
★ Director US Marshals Svc Benigno G Reyna 1200 CSQ3 . . . . . . . . . . . . 307-9001
                                                                FAX: 307-5040
★ Administrator, Drug Enforcement Admin Asa Hutchinson 12060 LP-2 . . . . 307-8000
  *Bob Jones U 1972 BS; Arkansas 1975 JD*
  Director, Fed Bur of Prisons Kathleen M Hawk Sawyer 654 HOLC . . . . . . . 307-3250
  *Wheeling Jesuit 1972 BA; West Virginia 1973 MA; Pennsylvania 1978 EdD*

★ Presidential Appointment requiring Senate confirmation
☆ Presidential Appointment
☐ Schedule C Appointment

● Career Senior Executive Service (SES) Appointment
○ Non-Career Senior Executive Service (SES) Appointment

In May 2003, the Attorney General and one of his subordinates, the Acting Assistant Attorney General for Legislative Affairs, responded in similar terms 14 to inquiries from the Boston Police Department, a U.S. Representative, and the U.S. House of Representatives Committee on the Judiciary. 15 The letter to the Boston Police Department elaborated slightly on the extent of the states' authority in the area of civil immigration enforcement. 16

In June 2003, Kris W. **Kobach**, Counsel to the Attorney General, 17 delivered remarks at a meeting of the FBI's Criminal Justice Information Services Advisory Policy Board. The meeting was attended by nearly 140 people, including state and local law-enforcement officials and representatives of private industry. 18 **Kobach** referred {337 F. Supp. 2d 528} several times to an OLC opinion. 19 At the beginning of his presentation he described the opinion:

"What I'd like to do just to sort of summarize what I'm going to say is give you a very quick overview of the Office of Legal Counsel opinion . . . . I don't want to get too much into the legalese of this, but [OLC found that] there [is] no federal preemption of state and local assistance for civil violations of the Act versus criminal violations of the Act. In addition, there were several Circuit court opinions in the 10th US Court of Appeals, and that also raised the question . . . that perhaps we need to resolve this issue and just clear up the ambiguity. In a

In June 2003, Kris **Kobach**, counsel to the Attorney General, gave what is perhaps the most detailed discussion of the OLC Memorandum during a presentation before the FBI's Criminal Justice Information Services Policy Advisory Board - a presentation attended by, *inter alia*, representatives from state and local police departments. **Kobach** began by stating that he would "sort of summarize" the Memorandum and then explained:

Document 26 is a group of email messages that were exchanged on June 5, 2002 among M. Edward Whelan III, Viet Dinh, Kris W. **Kobach**, and Jay Byee, all officials in the Department of Justice. 79 According to the defendant's brief and a slightly enhanced *Vaughn* index submitted with the defendant's reply memorandum, the messages contain a request by **Kobach** to Dinh and Bybee for comments on a portion of the Attorney General's draft remarks on the National Security Entry-Exit Registration System, two requests by Dinh to Bybee, **Kobach** and Whelan "for legal advice on authority of state and local police," and "two responses by OLC to the legal questions posed." 80

51 *NSEERS Modified*, 8 Bender's Immigr. Bull. 1879 (Dec. 15, 2003); *see also Ashcroft Announces Entry-Exit System*, 7 Bender's Immigr. Bull. 803 (July 1, 2002); Stanley Mailman & Stephen Yale-Loehr, *The New Rule on Special Registration*, 7 Bender's Immigr. Bull. 1399 (Nov. 15, 2002); Richard Sindelar, *CHIMERA, NSEERS, Lookouts, and Security Checks: The New Age*, 8 Bender's Immigr. Bull. 97 (Jan. 15, 2003); memorandum from INS Executive Associate Commissioner Johnny N. Williams of the Office of Field Operations, *Special Registration Call-in Procedures*, Nov. 27, 2002, *reproduced at* 8 Bender's Immigr. Bull. 60 (Jan. 1, 2003); Johnny N. Williams, HQ INS 70/28, *Identification of Nonimmigrant Aliens Subject to Special Registration on the National Security Entry Exit Registration System*, Sept. 5, 2002 (stamped ''LIMITED OFFICIAL USE ONLY''), *reproduced at* 7 Bender's Immigr. Bull. 1281 (Oct. 15, 2002); transcript of press conference by Kris **Kobach**, Counsel to Attorney General Ashcroft, Jan. 17, 2003, *reproduced at* 8 Bender's Immigr. Bull. 280 (Feb. 15, 2003).

1YBCASES                                                                                          1

© 2009 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

THE DEFENDANT: The only reason why I signed the plea agreement is because of the Court's ruling that Brian Hamway, whose real name is Brian Hamoui, is not a government agent. And that Brian Hamway is not involved in law enforcement.

And since then, six people have come forward claiming that Brian Hamway is an agent. Four worked out daily with Brian Hamway at the Equinox Gym in Greenwich Village, between 6:00 p.m. and 9:00 p.m. All four have witnessed Brian Hamway walk into the gym, pull out his black wallet with his badge in the center, and also carrying his gun.

The other two were approached by Agent Brian Hamway within one week after meeting me in 2003.

Agent Brian Hamway visited them at their place of employment, pulled out his badge and intimidated and encouraged both not to talk with me. And informed them that I was dying of AIDs, which is not true.

The prosecutor, Joshua Klein, made it very clear that Brian Hamway is an agent and worked with the previous prosecutor on my case, Brett Williams.

After I am informed that Mr. Klein and his supervisor, that Agent Brian Hamway drugged me during this investigation, and sexually tortured me, and I had taken a polygraph test and passed, Mr. Klein then denied, in court, on the record, knowing

11      For almost six years I have been terrorized by the
12 government. And to receive ten years in prison is unfair and
13 wrong.

14      In Europe I would have received restitution and a
15 fine. And it is not right for the case agent, Elizabeth
16 Nygaard to have control over what enhancements to give me when
17 this is the same person that was with Agent Brian Hamway when
18 he threatened to kill me after I informed his family that he
19 was gay.

20      It was okay for Agent Brian Hamway to drug and
21 terrorize me to the point of almost suicide.

22      When I started publicly confronting him, Agent
23 Elizabeth Nygaard and everyone involved in this case had to run
24 to his rescue.

25      I would frequently see Brian Hamway with everyone

856PtonS

1  involved in this case at ~~the~~ different clubs and bars in

2  Chelsea.

3  In 2002, after having a problem with a group of Agent

Ric Sena

4  Brian Hamway's friends, including Rick Sena, this investigation

5  became personal and out of control, with deviant gay and

6  lesbian FBI agents and prosecutors stalking me and monitoring

7  my every move.  Running around Chelsea and Greenwich Village

8  for over three years trying to set me up in any way possible.

9  Including purchasing illegal drugs, bank fraud and credit card

10  fraud.

11  They were out to destroy everything and everyone

12  around me.  Alienating me from my friends and contacts.

13  Sending anonymous evil letters, e-mails and text messages

14  claiming that I was dying of AIDs.  Which is not true.

15  Harassing my family with disturbing phone calls, destroying all

16  of my computers with viruses.  Destroying my company Online

Online-Portfolios.com

17  dash Portfolios dot-com by posting hundreds of negative blogs

18  about the company, canceling my credit cards while traveling,

19  turning my electric off in my apartment several times,

20  canceling my hotel and airline reservations, leaving me

21  stranded for hours, sometimes days, posting transcripts of my

22  personal phone conversations online.  Photographing me in my

23  apartment from rooftops and leaving the photos on my kitchen

24  counter.  Having Agent Brian Hamway's friends, Steve Grant,

25  whose real name is Steven Granat, threatening me with violence

856PtonS

1    to turn over my Internet companies for a revenue sharing.  I

2    could go on forever, the story only gets more demented.

3         After passing the polygraph test, the retired FBI

4    agent who gave me the test and also interviewed me, stated that

5    Agent Brian Hamway is a very sick individual and should be

6    fired.  Agent Elizabeth Nygaard and the prosecutor, Joshua

7    Klein, can continue to deny knowing Agent Brian Hamway and sealing the

8    records.

9         Eventually the truth will come out about this

10   cover-up.

11        The government can try and use their normal tactic of

12   discrediting by claiming that I am delusional or crazy.  I can

13   reassure everyone that I am not delusional or crazy.  I am not

14   afraid to take a polygraph test when it comes to anything that

15   I have said.  I can guarantee that not one government official

16   involved in this case will go near a polygraph test.

17        I will never forget that first injection of so-called

18   steroids that Agent Brian Hamway gave me.  Whatever type of

19   drug it was, my life has changed forever.  For over three years

20   I became Agent Brian Hamway's science experiment.

21        The second year of this investigation Hamway stated

22   that he was involved in science and experiments, and had access

23   to any type of drug, poison or disease available from the lab

24   where he worked.

25        He jokingly said, just don't tell anyone.

856PtonS

1      Twice Hamway almost killed me.

2      I want to know what type of drugs the government

3 authorized him to give me.  After what Agent Brian Hamway and

4 his friend and workout partner, Agent Elizabeth Nygaard did to

5 me, the government owes me an apology.

6      There is only one victim that was physically harmed in

7 this case.

8      Your Honor, I am not using Brian Hamway as an excuse

9 for the wire fraud charges.  What happened between Brian Hamway

10 and myself definitely affected the outcome of this

11 investigation.  I am not lying, I am telling the truth.  I am

12 not crazy, I do not believe in conspiracy theories.  I know my

13 mind and body very well.  The drugs that Agent Brian Hamway

14 gave me were so mind altering and debilitating that I collapsed

15 twice.  Hamway would frequently check my pulse.

16      The government is lying about Agent Brian Hamway and

17 covering up for him.  No one should ever be intentionally

18 drugged and terrorized to the point of almost suicide.

19      What the government is doing to me is absolutely

20 wrong.

After Judge Paul A. Crotty informed AUSA Klein that if I appealed my case to the Second Circuit, the Appellate Court would immediately send the case back to the District Court for a hearing regarding the outrageous misconduct committed by Agent Hamway. The judge instructed the prosecutor to submit a letter to the court to prevent that from happening. The prosecutor, along with Mr. Richard Herman, who was my attorney and was intimidated by the government, came up with the attached letters which are all fabricated to protect Agent Hamway and the government's case. After I informed the judge about Agent Hamway, Richard Herman refused to communicate with me and requested to be removed from the case.

In order to cover up everything pertaining to Agent Hamway, all government officials involved simply denied knowing anyone with the name of 'Brian Hamway' and stated that he is not a government employee or agent. AUSA Klein requested that Judge Paul A. Crotty permanently seal all records and proceedings pertaining to Agent Hamway due to security issues and to prevent the public from gaining access to any information regarding Agent Hamway. After sentencing, Richard Herman, acting as my attorney, informed me that Agent Hamway was currently working with the FBI, CIA, and NSA.



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

November 9, 2007

**REQUEST TO FILE UNDER SEAL**

**BY HAND AND FACSIMILE**

Honorable Paul A. Crotty
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

        Re:  <u>United States</u> v. <u>George Tonks et al.</u>,
             06 Cr. 771 (PAC)

Dear Judge Crotty:

       The Government respectfully submits this letter in
connection with the Court's Order, at the conference held on
October 25, 2007, that the Government investigate certain
allegations made by defendant George Tonks of governmental
misconduct.

A.   <u>BACKGROUND</u>

    1.  <u>The October 9, 2007 Letter</u>

       On October 9, 2007, defendant Tonks submitted a letter
to the Court alleging, in substance, that he had a sexual
relationship with an individual named Brian Hamoui, who used the
name "Brian Hamway," and whom the defendant "later discovered,
was an agent assigned to my case." The defendant alleged that
Hamway pored through his belongings, while in the defendant's
apartment, and attempted to induce the defendant to participate
in illegal activities including the sale of illegal drugs.

The Honorable Paul A. Crotty
November 9, 2007
Page 2:

      The defendant further alleged that former AUSA
Williams, who was the original prosecutor on this case, was
friendly with one of the defendant's employees, an individual
named "Jared Weiss" and that AUSA Williams had entered the
defendant's office in the Empire State Building to use computers
on several occasions.

  2.   The October 22, 2007 Letter

      On October 22, 2007, Tonks submitted another letter to
the Court in which he asserted that he had passed a polygraph.
The defendant further alleged that because he informed Hamway's
family, via email, that Hamway was gay, "Agent Hamway" became
angry at the defendant, and caused prejudice to the defendant
with respect to this case.

  3.   The October 18, 2007 Proffer

      During the weeks of October 8, 2007 and October 15,
2007, the Government engaged in plea discussions counsel for
defendant Tonks. During the course of these communications,
counsel conveyed Mr. Tonks' allegations regarding "Brian Hamway"
to the Government, and requested that the Government meet with
Tonks to hear his allegations concerning the conduct of "Brian
Hamway." The Government acceded to Mr. Herman's request and
agreed to schedule a proffer with Mr. Herman and the defendant.

      On October 25, 2007, the Government met with the
defendant and defense counsel. During the course of the proffer,
the defendant recited, in extensive detail, his dealings with an
individual named "Brian Hamoui," a/k/a "Brian Hamway," who,
according to the defendant, represented himself to be a doctor.
In substance, the defendant explained that he had inferred, from
Hamway's behavior, and from statements made by Hamway, that
Hamway was a federal agent -- most likely a DEA agent.
Specifically, the defendant recalled how Hamway repeatedly asked
the defendant if he could procure illegal drugs. It appears that
the defendant perceived this to be Hamway's attempt, in his
undercover capacity, to further a narcotics investigation. The
defendant further alleged that Hamway seemed to possess
information about various conversations and activities at which
Hamway was not present. It appears the defendant infers, from
those circumstances, that Hamway may have wiretapped the
defendant's phone in his capacity as a federal agent.
The defendant did not allege that Hamway wiretapped the

The Honorable Paul A. Crotty
November 9, 2007
Page 3

represented himself to be a federal agent.  When asked what
agency Tonks believed Hamway/Hamoui to work for Tonks responded
that he assumed it was the DEA because Hamway/Hamoui seemed
particularly interested in procuring illegal drugs from the
defendant, but that he did not know, and had assumed
Hamway/Hamoui's status as an agent based on his conduct.

        The defendant further alleged that he had interacted
with FBI Special Agent Elizabeth Nygaard at an Equinox fitness
facility and that Agent Nygaard, after speaking to the defendant,
walked away towards Hamway.  Finally, the defendant alleged that
an individual named "Brett Williams," the former prosecutor
assigned to this case, had visited the defendant's offices in the
Empire State Building on five or six occasions, during weekday
mornings, to use a computer.  When asked to describe Mr.
Williams, the defendant stated Mr. Williams was a thin African
American male.

        During the proffer, I stepped out of the room, and
called AUSA Williams, who is currently an AUSA in Georgia, to ask
whether he had ever visited the defendant's offices at the Empire
State Building.  AUSA Williams responded that he had never
visited the defendant's offices, that he had never entered the
Empire State Building, and that he wasn't even sure as to the
precise location of the Empire State Building.  AUSA Williams
further stated that he did not know an individual named Jared
Weiss.  Both prior to and immediately following the proffer, I
spoke with Special Agent Nygaard who confirmed that she was not a
member of the Equinox Fitness Club, had never seen the defendant
inside an Equinox facility, had no knowledge of a law enforcement
agent by the name of Brian Hamway or Brian Hamoui, and was not
aware of a narcotics investigation involving the defendant.

        After speaking with AUSA Williams and Agent Nygaard,
the Government informed Mr. Herman and the defendant of its view
that the defendant's allegations appeared unconnected to this
case, and that if the defendant wanted to accept the Government's
plea offer, he should advise the Government in the next few days
of his desire to do so and the parties should schedule a plea
proceeding.[1]

_____

        [1]    The only connection between the defendant's allegations
and the instant case appeared to be Agent Nygaard's presence at
the Equinox fitness facility, in the vicinity of Brian Hamway,
and the defendant's allegation that AUSA Williams had visited his

The Honorable Paul A. Crotty
November 9, 2007
Page 4

### 4. The October 25, 2007 Conference

Following the October 18, 2007 proffer, defense counsel advised the Government that the defendant wished to enter a guilty plea in this case. Consequently, the parties scheduled a plea proceeding for October 25, 2007.

When the parties appeared before the Court, Your Honor raised the question of whether it was appropriate to proceed, in light of the defendant's allegations of governmental misconduct, and the legal standard set forth in United States v. Cuervelo, 949 F.2d 559 (2d Cir. 1991). The Government explained its view that the defendant's allegations relating to Hamway involved an independent course of conduct unrelated to this case. The Court directed the defense to provide the Government with additional details relating to the Hamway allegation. The Court further directed that the Government to investigate this matter further and share its findings with defense counsel and the Court.

### 5. Defense Counsel's November 2, 2007 Letter

On November 2, 2007, the Government received a letter from defense counsel setting forth the defendant's allegations relating to Hamway. The allegations contained in the letter, a copy of which was provided to the Court, track, in large measure, the allegations made by the defendant at the October 18, 2007

---

offices at the Empire State Building. In light of the defendant's misidentification of AUSA Williams as a thin individual, the defendant's misspelling of AUSA Williams' first name as "Brett" instead of "Bret," and AUSA Williams' assertion that he had never been inside the Empire State Building and did not know an individual named Jared Weiss, the Government concluded that the individual to whom the defendant was referring who visited his offices was not former AUSA Williams. As to the defendant's claim that he interacted with Special Agent Nygaard inside an Equinox facility, that allegation was refuted by Agent Nygaard. Moreover, Agent Nygaard indicated she did not know anyone named Hamway. Moreover, the defendant stated, during the proffer, that he believed "Brian Hamway" was most likely a DEA agent because he appeared to be interested in procuring narcotics in connection with a narcotics investigation. Consequently, the Government concluded that the defendant's allegations involved a course of conduct that was independent of this case.

The Honorable Paul A. Crotty
November 9, 2007
Page 5

proffer.[2]

B.    THE GOVERNMENT'S INVESTIGATION

         Since the October 25 conference, the Government has
continued to investigate the allegations made by Tonks concerning
Hamway/Hamoui and has learned the following:

    1.    Database Searches

         The Government has confirmed that there is no federal
law enforcement agent by the name of "Brian Hamoui" or "Brian
Hamway." The Government has conducted a search of the Department
of Justice personnel database, which includes employees,
including Special Agents of the FBI and DEA. The results of the
search indicate that no one by the name Hamway or Hamoui is
employed by the Department of Justice, the FBI or the DEA.
Furthermore, the Government has conducted a search of databases
maintained by the Department of Homeland Security, the results of
which indicate that no one by the name of Brian Hamoui or Brian
Hamway is an employee of DHS or any of its subsidiary agencies.

         In addition, the Government contacted the New York
Police Department to request that they conduct a search of the
database for personnel maintained by the New York Police
Department. The Government was informed by the NYPD that its
search indicates that no one by the name of Hamoui or Hamway is
employed by the NYPD.

         The Government also conducted a search of a database
called "Autotrak." The results of this search indicate that
there is an individual by the name of Brian Hamway, a/k/a "Brian
Hamoui," who is a New York resident and former resident of Akron,
Ohio, and who is listed as possessing a medical license. This
individual is further listed as possessing a "DEA controlled
substance license." It is the Government's understanding that

_____

         [2]    Although the allegations in the November 2 letter are
similar to what Tonks alleged during the October 18 proffer,
there are some differences. For example, the Government does not
recall Tonks stating, during the proffer, that Hamway made
statements that indicated his knowledge of the dollar amounts
that co-defendant Duane Catalano received in connection with the
instant case during the prior few days. (See November 2, 2007
Letter at 3).

The Honorable Paul A. Crotty
November 9, 2007
Page 6

every doctor who possesses a medical license is eligible to apply
for a DEA controlled substance license, which allows physicians
to prescribe certain controlled substances.

Upon learning of the existence of a doctor by the name
of Hamway, a/k/a "Hamoui," the Government requested that the DEA
conduct additional database searches to determine whether this
individual ever functioned as a subject, informant or cooperating
witness on behalf of the DEA. The results of these searches
indicated that no one by the name of Hamway or Hamoui ever
functioned in any of these capacities.

Finally, the Government obtained a record of
Hamway/Hamoui's criminal history that indicates this individual
was never arrested or charged in any criminal proceeding.

2. AUSA Williams' Alleged Visit To The Defendant's Offices

As discussed above, the Government has inquired of
Former AUSA Bret Williams whether he ever visited the defendant's
offices at the Empire State Building. AUSA Williams responded
that he has never visited the defendant's offices. AUSA further
stated that he has never been inside the Empire State Building.
The Government also inquired of AUSA Williams whether he knew an
individual named Jared Weiss. AUSA Williams responded that he
did not know anyone by that name.

3. Special Agent Nygaard's Alleged Appearance At The
Equinox Fitness Club

As discussed above, FBI Special Agent Nygaard has never
been a member of Equinox. Further, Agent Nygaard has never
spoken to the defendant inside an Equinox gym and has no
recollection of ever having been inside an Equinox gym. Also,
Agent Nygaard does not know anyone by the name of Brian Hamway or
Brian Hamoui. Finally, according to agent Nygaard there was
never an agent by the name of Hamway or Hamoui that was involved
in this case in any way.

C. APPLICABLE LAW

In order to be entitled to a factual hearing concerning
the defendant's claim that a federal agent engaged in outrageous
conduct involving sexual relations with the defendant:

at a minimum, the defendant, must show: (1)

The Honorable Paul A. Crotty
November 9, 2007
Page 7

>that the government consciously set out to
>use sex as a weapon in its investigatory
>arsenal, or acquiesced in such conduct for
>its own purposes upon learning that such a
>relationship existed; (2) that the government
>agent initiated a sexual relationship, or
>allowed it to continue to exist, to achieve
>governmental ends; and (3) that the sexual
>relationship took place during or close to
>the period covered by the indictment and was
>entwined with the events charged therein.

United States v. Cuervelo, 949 F.2d 559, 567 (2d Cir. 1991).
"[A]llegations meeting these criteria warrant a hearing so that
the precise facts may be ascertained." Id. Once those facts are
ascertained, a determination can be made "whether any violation
of due process standards has occurred." Id.

D.    DISCUSSION

        Applying the standard articulated by the Second Circuit
in United States v. Cuervelo to the facts of this case, it is
clear that the defendant fails to meet the threshold showing
necessary to trigger a factual hearing. The results of the
Government's investigation indicate that there is no FBI, DEA, or
other federal agent by the name of Hamway or Hamoui.
Furthermore, there is no NYPD employee or DEA informant by either
of those names. In addition, the results of the Government's
investigation indicate that there is, in fact, an individual
named Brian Hamway, a/k/a "Brian Hamoui," who is a doctor, and
appears to have lived in Ohio.[3]

        Consequently, even if Hamway/Hamoui did have sexual
relations with the defendant, as the defendant alleges, there has
been no showing made that "the government consciously set out to
use sex as a weapon in its investigatory arsenal." Id. As the
results of the Government's investigation make plain there is no
basis for Tonks' claim that Hamway/Hamoui was a federal agent.
Indeed, the Government's investigation shows that Hamway/Hamoui

---

        [3].    The Autotrak database listed an Akron, Ohio address in
addition to several New York addresses for Hamway. Tonks claims
that Hamway introduced himself as "from Cleveland, Ohio and
explained that he ..." (Defendant's November 2, 2007 letter at 1).

The Honorable Paul A. Crotty
November 9, 2007
Page 8

is a doctor, living in New York, who appears to have lived in
Ohio. This finding comports with what the defendant alleges
Hamway/Hamoui communicated to him, namely, that he was a doctor,
who resided in New York, and previously lived in Ohio. Not only
is it unlikely that a doctor would also be a federal law
enforcement agent, but, as discussed above, the Government's
investigation shows that Hamway/Hamoui is not, in fact, a federal
agent. Thus Tonks fails to meet the first prong of the three-
part Cuervelo standard.

        Based on the foregoing, a necessary corollary is that
Tonks cannot meet the second part of the Cuervelo standard either
because he cannot show that a "government agent initiated a
sexual relationship, or allowed it to continue to exist, to
achieve governmental ends." For the same reason, Tonks fails to
meet the third prong of the Cuervelo test.[4] Thus, unlike the
defendant in Cuervelo, Tonks cannot meet any of the three prongs
under the Cuervelo standard, let alone all of them, as the Second
Circuit requires, in order to trigger a factual hearing.

        The Government has not submitted affidavits in
conjunction with this letter because of the possibility that, in
light of the results of its investigation, the defendant may
withdraw his request for a hearing. The Government intends to
contact defense counsel on Tuesday, November 13, 2007, to discuss
this matter further. Should the defendant continue to press his
request for a hearing, the Government intends to request an
adjournment of the conference, currently scheduled for November
14, 2007, until Wednesday, November 21, 2007, to permit the
Government time to gather and file the necessary affidavits and

---

        [4]     Moreover, even if Hamway/Hamoui were an agent, there is
no reasonable basis for inferring he had any connection with this
case. Tonks' allegation that Agent Nygaard stood near
Hamway/Hamoui (or even spoke to him, if that is the claim) inside
an Equinox facility at some point during the investigation is
entirely refuted by Agent Nygaard. Moreover, even if true, such
a claim does not rise to the level of demonstrating that
Hamway/Hamoui had any involvement in this case. Similarly,
Tonks' allegation that AUSA Williams visited him in his office is
wholly baseless and is belied by the facts and by AUSA Williams.
Consequently, the third prong of the Cuervelo test would, in any
event, not be met because Tonks can make no showing that
Hamway/Hamoui's involvement with Tonks was "entwined" with the
events charged in the indictment. See id.

The Honorable Paul A. Crotty
November 9, 2007
Page 9

will, upon filing the affidavits, ask the Court to deny the
defendant's application for a hearing. Should the defendant
elect to withdraw his request for a hearing and proceed with a
guilty plea, the Government will be prepared to proceed with a
guilty plea on Wednesday, November 14.

        The Government respectfully requests that this letter
be filed under seal.

                          Respectfully submitted,

                          MICHAEL J. GARCIA
                          United States Attorney

                    By:   _____
                          Joshua Klein
                          Assistant United States Attorney
                          Telephone:  (212) 637-2397

cc:  Richard B. Herman, Esq.

**TO BE FILED UNDER SEAL**

November 2, 2007

Joshua Klein, Esquire
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

                    Re:     United States v. George Bing Tonks
                            06 CR 771 (PAC)

Dear Mr. Klein:

         Pursuant to Judge Crotty's order at the conference held on October 25, 2007 and based upon conversations with Mr. Tonks, I write regarding his allegations against Brian Hamway aka Brian Hamoui (hereinafter "Hamway").

         Mr. Tonks (hereinafter "Tonks") reports that he first met Hamway at the Roxy Nightclub in Manhattan in March 2004 upon Tonks' return from a trip to Europe. Upon entering the club, Tonks encountered his friend, Rick Sena (hereinafter "Sena"), who runs various parties for Manhattan nightclubs. As Tonks headed towards the men's room, one of the men with Sena followed him and said "get over here now, you little shit. I heard you're the man. You're the man. You're the man. Come over here, I want to talk to you." He began to ask Tonks questions: his name, employment, where he is from. He also asked Tonks if he knew where to get large amounts of ecstasy. The man introduced himself as Brian Hamway from Cleveland, Ohio and explained that he was a doctor, working for CitiBank. The two spent some time together at the club, dancing, kissing and groping one another on the dancefloor. At 5:30 am, they left the club and Hamway walked Tonks to his home on 7th Avenue and 19th Street. As they passed a police station, Tonks observed that Hamway became nervous and wanted to cross the street.

         They arrived at Tonks' building and Tonks invited Hamway upstairs. Upon entering the apartment and despite never having been there before, Hamway headed straight for the bathroom. When Tonks asked him how he knew where to go, Hamway explained that a friend of his lives in the same building. Tonks decided to take a shower and when he finished, he caught Hamway

looking through his kitchen drawers and opening bottles in the refrigerator. Tonks angrily asked him what he was doing and Hamway quickly changed the subject. They went into the living room and Tonks drank a glass of water that Hamway offered him. Tonks soon became groggy and Hamway yelled at him to wake up in an angry and aggressive manner. Hamway wanted to wrestle, but Tonks couldn't move so he put his head on Tonks' chest, listened to his heartbeat and suggested that someone may have drugged him at the Roxy.





Finally, as you know, Mr. Tonks alleged during an interview with yourself and AUSA Marcus Asner that he saw AUSA Bret Williams working on his computer in his office in the Empire State Building. Tonks additionally alleged during this meeting that he saw Special Agent Elizabeth Nygaard of the FBI at the Equinox Fitness Club.

Should you require clarification or additional information regarding any of the above allegations, please let me know.

Very truly yours,

RICHARD B. HERMAN, LLC

By: Stefanie V. Plaumann

cc:     Honorable Paul A. Crotty
        United States District Judge

| 03/16/2009 | 87 | SEALED DOCUMENT placed in vault. (rt) (Entered: 03/16/2009) |
| 05/05/2009 | 88 | TRANSCRIPT of Proceedings as to George Bing Tonks held on November 17, 2007 before Judge Paul A. Crotty. (mro) (Entered: 05/07/2009) |
| 06/05/2009 | 89 | Judgment Returned Executed for 66 Judgment, as to George Bing Tonks on 3/11/2009. Defendant committed to FCI Jesup. (dnd) (Entered: 06/05/2009) |

## PACER Service Center

### Transaction Receipt

07/21/2009 13:46:21

| PACER Login: | us5070 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:06-cr-00771-PAC |
| Billable Pages: | 8 | Cost: | 0.64 |

behalf.

Tonks then read a statement to the Court. The bulk of the statement addressed Tonks' concerns and allegations about his prosecution in New York, not Iowa. He asserted that he was "drugged, sexually tortured, and terrorized" by a New York FBI agent [Tr. p.17, l. 6-8], and essentially that the New York investigation and prosecution was replete with corruption at various levels and by various individuals. With respect to the small portion of remarks concerning the Iowa offense, Tonks denied having, himself, any contact with the victim, but nevertheless told the Court, "I would like to



George Tonks
09650-424
Federal Correctional Institution
2680 Highway 301 South
Jesup, GA 31599

LEGAL MAIL

09650-424
Linda R Reade
District Court Judge
U.S. Courthouse
4200 C Street, SW
Cedar Rapids, IA - 52404
United States

FCI JESUP

NOV 04 2009

FEDERAL CORRECTIONAL INSTITUTION
2600 HIGHWAY 301
JESUP, GA 31599
Mail Room/R&D
DATE: _____
THE ENCLOSED LETTER WAS PROCESSED
THROUGH SPECIAL MAILING PROCEDURES
FOR FORWARDING TO YOU. THE LETTER
HAS NEITHER BEEN OPENED NOR INSPECTED.
IF THE WRITER RAISES A QUESTION OR
PROBLEM OVER WHICH THIS FACILITY HAS
JURISDICTION YOU MAY WISH TO
RETURN THE MATERIAL FOR FURTHER
INFORMATION OR CLARIFICATION.
IF THE WRITER ENCLOSES CORRESPONDENCE
FOR FORWARDING TO ANOTHER ADDRESSEE,
PLEASE RETURN THE ENCLOSURE
TO THE ABOVE ADDRESS.

LEGAL MAIL